**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Velarde,<br><br>Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>Defendant. | No. CV-12-00961-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiff's Opening Brief (Doc. 26) and Defendant's Response Brief (Doc. 29). Plaintiff did not file a Reply Brief.

Plaintiff Michael Velarde seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

**A.   Factual Background**

Velarde was born in November 1963. He has been diagnosed with cervical and lumbar degenerative disease, gastroesophageal reflux disease, obstructive sleep apnea, carpal tunnel syndrome, diabetes mellitus, fibromyalgia, bipolar disorder, depression, and anxiety disorder. In November 2010, he testified that he had been diagnosed with

fibromyalgia about 5 or 6 months before the hearing. He also testified that his diabetes and manic episodes were controlled by medication, but he continued to have depression and pain in his neck, back, and hands.

Velarde is able to drive, shop, go to medical appointments, prepare simple meals, do laundry, and perform personal care. He watches television and uses a computer and the Internet. He has at least a high school education and is able to communicate in English. He previously worked as an account manager/customer service for a company that performed DVD and CD replication, customer service representative at a call center, and manager of a car rental company. He testified that he stopped working for the car rental company because of the stress, he stopped working at the call center because it went bankrupt, and he quit the replication company because he had bad anxiety attacks.

### B. Procedural History

On January 23, 2008, Velarde protectively applied for disability insurance benefits and supplemental security income, alleging disability beginning April 15, 2005. On November 15, 2010, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On January 27, 2011, the ALJ issued a decision that Velarde was not disabled within the meaning of the Social Security Act. The Appeals Council denied Velarde's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On May 7, 2007, Velarde sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a

preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the

claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

The ALJ found that Velarde meets the insured status requirements of the Social Security Act through December 31, 2010, and that he has not engaged in substantial gainful activity since April 15, 2005. At step two, the ALJ found that Velarde has the following impairments that are severe when considered in combination: cervical and lumbar degenerative disease, gastroesophageal reflux disease, obstructive sleep apnea, carpal tunnel syndrome, diabetes mellitus, fibromyalgia, bipolar disorder, depression, anxiety disorder, and alcohol abuse in remission. At step three, the ALJ determined that Velarde does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Velarde:

> has the residual functional capacity to perform light work with restrictions as light work is defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is limited to unskilled work; is unable to crawl, crouch, climb, squat or kneel; must refrain from using his lower extremities for pushing or pulling; and must refrain from using his upper extremities for work above shoulder level.

The ALJ further found that Velarde is unable to perform any of his past relevant work. At step five, the ALJ concluded that, considering Velarde's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Velarde could perform.

## IV. ANALYSIS

Velarde contends the ALJ erred by (1) rejecting medical source opinions regarding Velarde's ability to maintain concentration and regular attendance and (2) accepting the vocational expert's testimony that Velarde can perform alternative work that requires reaching even though his residual functional capacity excludes using his upper extremities for work above shoulder level.

### A. The ALJ Did Not Err in Weighing Medical Source Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632.

### 2. Ramin Sabahi, M.D., Treating Physician

On October 20, 2010, Dr. Sabahi submitted a medical source statement concerning the nature and severity of Velarde's fibromyalgia and pain. He indicated that he had treated Velarde once a month from March 4, 2010, through October 13, 2010. He also stated that October 13, 2010, is the earliest date the description of symptoms and limitations on the questionnaire applied.

For clinical findings, Dr. Sabahi indicated that Velarde had characteristic fibromyalgia tender points. Dr. Sabahi opined that during a typical workday, Velarde's experience of pain or other symptoms was frequently severe enough to interfere with the

attention and concentration needed to perform even simple work tasks and that Velarde is incapable of even "low stress" jobs. He further opined that Velarde's impairments are likely to produce "good days" and "bad days," and he likely would be absent from work more than four days a month. Dr. Sabahi stated that Velarde does not have significant limitations with reaching, handling, or fingering.

The ALJ gave Dr. Sabahi's "opinion limited weight because it heavily favors the claimant's subjective complaints and is inconsistent with objective findings, other opinion evidence, and the record as a whole."

### 3. Brian Page, D.O., Treating Physician

On October 20, 2010, Dr. Page submitted a medical source statement concerning the nature and severity of Velarde's physical impairment. He stated that he had treated Velarde monthly from December 5, 2009, through October 4, 2010. He also stated that December 5, 2009, is the earliest date the description of symptoms and limitations on the questionnaire applied.

Dr. Page opined that Velarde had cervical and lumbar degenerative disc disease with a poor prognosis. He further stated that Velarde had severe back and neck pain and weakness in his arms and legs. Dr. Page opined that on a scale of 0 to 10, Velarde's pain and fatigue each were a 10 and that in an 8-hour workday, Velarde could sit 0-2 hours and stand/walk 0-2 hours. He also opined that Velarde could never lift and carry any weight, even less than 10 pounds; has significant limitations in doing repetitive reaching, handling, fingering, and lifting; and must use a cane or other assistive device while engaging in occasional standing/walking. Dr. Page stated that Velarde is incapable of handling even low work stress because of severe pain and depression.

The ALJ gave Dr. Page's "opinion limited weight because it heavily favors the claimant's subjective complaints and is inconsistent with objective findings, other opinion evidence, and the record as a whole."

### 4. Sharon Steingard, D.O., Examining Physician

On June 6, 2008, Dr. Steingard performed a consultative comprehensive psychiatric evaluation at the request of the state agency. She concluded: "Due to his severe depression, I think he would probably have some difficulty maintaining concentration over the course of a full 40-hour workweek," but also, "He was able to maintain adequate concentration during the interview." Dr. Steingard further opined: "Cognitively he is able to perform a variety of tasks," but "I think he would have some problems with complicated multistep or multilayered tasks."

The ALJ gave Dr. Steingard's "opinion considerable weight because it considers the claimant's subjective complaints and is consistent with the objective findings, opinion evidence, and the record as a whole."

### 5. Brent Geary, Ph.D., Examining Physician

On January 6, 2009, Dr. Geary performed a consultative comprehensive psychiatric evaluation upon the request of the Social Security Administration. He opined that Velarde had moderate limitations in sustained concentration and persistence because of depression and pain. The ALJ gave Dr. Geary's "opinion significant weight because it considers the claimant's subjective complaints and is consistent with the objective findings, opinion evidence, and the record as a whole."

### 6. Alan Goldberg, Psy.D., State Agency Medical Consultant

On July 10, 2008, Dr. Goldberg reviewed the medical evidence of record and provided a psychiatric review technique form. Dr. Goldberg opined that Velarde had moderate difficulties in maintaining concentration, persistence, or pace. Dr. Goldberg also completed a mental residual function capacity assessment form in which he opined that Velarde was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work with or near others without being distracted, complete a normal

workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Goldberg stated that Velarde can understand, remember, and carry out simple tasks/instructions and make simple work related decisions.

The ALJ gave Dr. Goldberg's "opinion significant weight because it considers the claimant's subjective complaints and is consistent with the objective findings, opinion evidence, and the record as a whole."

### 7. Stephen Stolzberg, M.D., Psychiatrist

On June 22, 2011, after the ALJ's January 27, 2011 hearing decision, Dr. Stolzberg completed a mental work restriction questionnaire for submission to the Appeals Council. He said that he began treating Velarde on December 9, 2010, several weeks after the administrative hearing. Regarding Velarde's concentration and task completion, Dr. Stolzberg wrote, "No problem except from pain."

The ALJ did not err by disregarding Dr. Stolzberg's opinion that was not submitted to the ALJ for his consideration.

### 8. The ALJ's Weighing of Medical Source Evidence

The ALJ set forth clear, convincing, specific, and legitimate reasons supported by substantial evidence in the record for not giving greater weight to the opinions of treating physicians than to the opinions of other physicians.

First, the ALJ found "scant if any" objective medical evidence in the record of Velarde's alleged impairments and even less evidence supporting the severity of the alleged symptoms. Although Velarde alleges disability beginning April 15, 2005, the medical records are from 2007 through 2011, and the ALJ noted they are "disproportionately concentrated from 2007, 2008 and early 2009." The ALJ stated that the majority of Velarde's alleged impairments are indicated in the medical evidence only in the patient narrative or history sections.

Second, the ALJ found that medical evidence of record indicates that Velarde reported on numerous occasions improved and effectively managed symptoms. The ALJ provided specific examples of reported improvement with citations to the medical record.

Third, the ALJ found that the opinions of Dr. Page and Dr. Sabahi were the only opinion evidence in the record that offered restrictions beyond those listed in the residual functional capacity assessment. Dr. Page opined that Velarde could never lift any weight, even less than 10 pounds, is incapable of sitting or standing/walking for 0-2 hours in an 8-hour workday, and would likely miss more than 3 days of work per month. Dr. Sabahi opined that Velarde is capable of occasionally lifting less than 10 pounds, but would likely miss more than 4 days of work per month due to his impairments. Both doctors said Velarde is incapable of even low stress work. Yet Velarde reported that he is capable of driving (presumably sitting in a car), watching television, using a computer, preparing simple meals, doing laundry, shopping, stretching, and attending physical therapy.

Moreover, the ALJ did not reject the opinions of Dr. Steingard and Dr. Geary, but rather gave them limited weight. And they did not, as Velarde contends, opine that he would "have difficulty in staying on task sufficient to complete a normal workday or workweek." Dr. Steingard opined that Velarde would probably have "some difficulty" maintaining concentration over the course of a full 40-hour workweek due to depression and would have "some problems" with complicated tasks. Dr. Geary opined that Velarde had moderate limitations in sustained concentration and persistence because of depression and pain. The residual functional capacity assessment reflects these opinions in that it limits Velarde to unskilled work.

Further, the vocational expert testified that most employers will not tolerate an employee being off-task more than 10 to 15 percent of the time. The medical source opinions did not define "moderate limitation" in terms of the percent of time off-task.

- 10 -

The ALJ was not required to adopt the vocational expert's opinion that if there was a "moderate restriction in that area," it would be difficult to do any job when substantial evidence reasonably supported the ALJ's residual functional capacity finding. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

Therefore, the ALJ did not err in weighing medical source evidence.

**B.    The ALJ Did Not Err by Identifying Alternative Work Incompatible with the Residual Functional Capacity Assessment.**

Velarde contends the ALJ erred by relying on the vocational expert's identification of alternative work that involved "reaching" when his residual functional capacity excludes using his upper extremities for work above shoulder level. The alternative jobs require "reaching," which Velarde interprets as "reaching in all directions," which he construes as including reaching above shoulder level. But the job descriptions from the *Dictionary of Occupational Titles*, which Velarde attached to his opening brief, do not indicate that these jobs—office clerk, envelope addresser, and film touch-up inspector—require reaching above shoulder level. Thus, there is no apparent conflict between the identified alternative jobs as defined by the *Dictionary of Occupational Titles* and Velarde's residual functional capacity.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 31st day of May, 2013.

_____
Neil V. Wake
United States District Judge

- 11 -